RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE 7/9/09
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| EARL K. JACKSON, JR. | CIVIL ACTION NO. 07-1477 |
| VERSUS | JUDGE ROBERT G. JAMES |
| SHAUNE MAYNARD, ET AL. | MAG. JUDGE KAREN L. HAYES |

OPINION

Plaintiff Earl K. Jackson, Jr. ("Jackson"), brought suit against Monroe City Police Officer Shaune Maynard ("Maynard") in his individual and official capacities, and the City of Monroe ("City") under 42 U.S.C. § 1983. Jackson alleges that Officer Maynard and the City violated his constitutional right to be free from the use of excessive force during arrest. Jackson also alleges various state law claims arising out of the arrest.

A bench trial was held in this matter on August 18, 2009.

I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court hereby enters the following findings of fact and conclusions of law. To the extent that any finding of fact constitutes a conclusion of law, the Court hereby adopts it as such, and to the extent that any conclusion of law constitutes a finding of fact, the Court hereby adopts it as such.

A. FINDINGS OF FACT

At trial, the Court heard testimony regarding the arrest from Jackson; Jackson's mother, Lillian Taylor; and Officers Maynard, Timothy Klick ("Klick"), and Kevin Cope ("Cope").[1] A deposition of Jackson's estranged wife, Belinda Jackson ("Ms. Jackson"), was also submitted as

---

[1] Plaintiff originally brought suit against Officers Klick and Cope as well. However, on June 5, 2009, Plaintiff moved to dismiss them from this lawsuit. The Court granted his motion. [Doc. No. 25].

substantive evidence. Based on the testimony and evidence, the Court finds the Officers' versions of the events credible and true and that Maynard did not use excessive force during Jackson's arrest.

During the evening of September 7, 2006, Jackson was drinking beer outside Ms. Jackson's apartment. At the time, Jackson was under the supervision of the State Probation Office. As a condition of his probation, Jackson was prohibited from visiting Ms. Jackson's apartment. Jackson walked inside the apartment and began to argue with Ms. Jackson. During the argument Jackson poured beer on top of her head. Ms. Jackson then called the police.

In response to the call, Klick, Cope, and Maynard proceeded to 831 Standifer, Apartment B, in separate cars. The Monroe Police Department frequently received calls from this area related to violence, and Klick, Cope, and Maynard were aware that domestic battery calls are frequently violent and dangerous. The first officer to arrive was Klick. Klick initially came in contact with Jackson as Jackson was leaving the apartment. Klick asked Jackson to come to him, but Jackson yelled several times that he was leaving. Around this time, Cope arrived at the apartment. As he approached Jackson, Cope could smell a strong odor of alcoholic beverages. Cope stayed with Jackson while Klick went to speak with Ms. Jackson inside the apartment.

Klick noticed that the apartment smelled like alcoholic beverages. Household items were scattered around the apartment indicating that there had recently been a struggle. Ms. Jackson told Klick that Jackson poured beer on her head, hit her in the back of the neck, and threatened to kill her.

Meanwhile, Maynard arrived at the apartment. Maynard had been to the apartment on several prior occasions and knew that Jackson's presence at Ms. Jackson's apartment violated the terms of his probation. As Maynard approached Jackson, Cope started to walk towards the apartment to check on Klick. Maynard noticed that Jackson was belligerent and smelled like alcoholic beverages.

2

He asked Jackson why he was back at the apartment, noting that he was not supposed to be there. Jackson became further agitated and upset. He began yelling, moving towards Maynard, and waving his hands in the air. Jackson put his chest up to Maynard's chest. Maynard stepped back and told Jackson to calm down.

Cope noticed Jackson putting his chest up to Maynard's and moved to restrain him. In an attempt to handcuff Jackson, Cope grabbed Jackson's right wrist, and Maynard grabbed his left. Jackson then bent over and turned counter-clockwise. This caused Jackson and Maynard to trip over a large tree root, fall into a parked truck in the driveway, and then fall to the ground. Jackson landed face-to-face and on top of Maynard. Maynard pushed Jackson off, straddled him, and then handcuffed him.

Maynard grabbed his shoulder in pain and Jackson complained that he could not walk. By this time Klick had returned to the scene of the arrest. Klick and Cope helped Jackson get up off the ground and put him in Klick's car. Klick drove Jackson to E.A. Conway Hospital where it was determined that he had broken his tibia.

### B. CONCLUSIONS OF LAW

Jackson claims that Maynard and the City violated his constitutional right to be free from the use of excessive force during arrest. Jackson also claims that the City was deliberately indifferent to his constitutional rights because the City failed to adequately train Maynard.

Jackson also requests that the Court exercise its supplemental jurisdiction over his various state law claims.

## 1. SECTION 1983 INDIVIDUAL CAPACITY CLAIM AGAINST OFFICER MAYNARD

To state a claim pursuant to § 1983, a plaintiff must claim a violation of a right secured by the Constitution or laws of the United States and demonstrate the alleged deprivation was committed by a person acting under color of state law. *See* 42 U.S.C. § 1983; *Randolph v. Cervantes*, 130 F.3d 727, 730 (5th Cir. 1997). The excessive force claim arises under the Fourth Amendment to the United States Constitution. The parties have stipulated that Maynard was acting under color of state law.

Whether excessive force was used in effectuating Jackson's arrest is analyzed under the Fourth Amendment's reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). To prevail, Jackson must show (1) an injury (2) that resulted directly and only from a use of force that was excessive to the need for force and (3) that the use of force was objectively unreasonable under the circumstances. *See Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008); *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. This determination "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

It is undisputed that Jackson was injured during the arrest. He suffered a broken tibia either during the fall with Maynard or immediately thereafter. Jackson's injury, however, was caused by his resistance to arrest. Even if the injury was due to Maynard's use of force, such force was not

excessive. In terms of the degree of force used, Jackson's resistance to arrest warranted increasing levels of force.

Further, assuming the cause of Jackson's injury was due to Maynard's use of force, such force was reasonable given the circumstances. One indication of reasonableness is "whether the suspect poses an immediate threat to the safety of the officers . . . ." *Id.* Jackson was intoxicated, belligerent, and yelling at Maynard. His conduct posed an immediate threat to Maynard's safety. Maynard, in fact, hurt his shoulder during the arrest.

Another indication of reasonableness is "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* As previously noted, Jackson resisted arrest.

Maynard's use of force, therefore, was reasonable given that Jackson resisted arrest and posed an immediate threat to the safety of Maynard. Accordingly, Maynard did not violate Jackson's Fourth Amendment right to be free from the use of excessive force.

### 2. SECTION 1983 OFFICIAL CAPACITY CLAIM AGAINST OFFICER MAYNARD AND MUNICIPAL LIABILITY

Jackson's § 1983 claim against Maynard in his official capacity as an officer employed by the City merges with Jackson's claim against the City. *See Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000). Having found that Maynard did not violate Jackson's constitutional rights, Jackson's claim against the City fails as a matter of law. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (finding that if the officer had inflicted no constitutional injury, then the city and the commission could not be liable under § 1983); *see also Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389, 392–93 (5th Cir. 1999) (same).

### 3. STATE LAW CLAIMS

The Court has supplemental jurisdiction over Jackson's state law claims of assault, battery, and intentional infliction of emotional distress. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349–50 (1988) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)); *see also* 28 U.S.C. § 1367(c). Having found that Maynard's use of force was reasonable, Jackson's state law claims against Maynard and the City fail. *See Lowrey v. Pettit*, 31,881-CA (La. App. 2 Cir. 5/07/99), 737 So. 2d 213, 216 (battery); *Bulot v. Intracoastal Tubular Srvs., Inc.*, 98-C-2105 (La. App. 4 Cir. 2/24/99), 730 So. 2d 1012, 1018 (assault); *McCoy v. City of Shreveport*, 492 F.3d 551, 563 (5th Cir. 2007) (intentional infliction of emotional distress).

## II. CONCLUSION

For the foregoing reasons, the Court finds in favor of Defendants Shaune Maynard and the City of Monroe and against Plaintiff Earl K. Jackson, Jr.

MONROE, LOUISIANA, this 31 day of August, 2009

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE